IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
vs. ) Crim. No. 02-15 (7) Erie
) (Civil Action No. 04-199 Erie)
RONALD A. DOMIAN )

**Opinion and Order**

Before the Court is Petitioner Ronald A. Domian's Motion to Vacate under 28 U.S.C. 2255 filed at Criminal No. 02-15 Erie (Doc. 517), and assigned Civil Action No. 04-199 Erie.

*Background*

Ronald Domian was one of 23 defendants named in a criminal indictment alleging a drug conspiracy involving powder cocaine. He was charged in three counts of an eighteen count indictment with one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii), and two counts of using a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b).

Initially after being arrested Mr. Domian waived a detention hearing and agreed to detention until further information could be obtained. (See Docs. 105 & 106.) Pursuant to his counsel's motion to revoke or amend detention, a hearing was held on July 24, 2002, and continued on July 29, 2002. (See Docs. 179, 209, 214.) On July 29, 2002, Mr. Domian was released on a $25,0000 O.R. Bond and ordered to serve home detention at the Maria House Project. (Doc. 215.)

On September 13, 2002, the government filed a motion to revoke Mr. Domian's bond based on the fact that Mr. Domian had left the Maria House and entered his estranged wife's house while intoxicated. (Doc. 244.) Mr. Domian was arrested and charged with public drunkenness and criminal trespass. (Doc. 244.) Based on these facts Magistrate Judge Susan Paradise Baxter Judge found that Mr. Domian had violated the conditions of his Bond, and therefore revoked his bond and ordered that he be detained.

On October 16, 2002, Mr. Domian pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). Pursuant to the plea agreement the parties agreed that Mr. Domian was responsible for between 500 grams and two kilograms of cocaine.

In November 2002, Mr. Domian's counsel filed a motion to amend bond (Doc. 321) and a motion for release pending sentencing (Doc. 329). We granted the motion for release on November 26, 2002, ordering that Pretrial Services identify and place Mr. Domian at an appropriate drug and alcohol treatment center pending sentence. (Doc. w/329.) Mr. Domian was placed at Gateway in Pittsburgh on or about November 27, 2002.

On December 19, 2002, the government filed a motion to revoke Mr. Domian's release and for issuance of arrest warrant. (Doc. 338.) The government noted that Mr. Domian had violated the terms and conditions of his treatment at Gateway such that Gateway was no longer willing to house Mr. Domian. (See Report on the Conduct of Defendant While on Bond, attached as Exhibit 1 to Doc. 338.) Gateway staff explained to Pretrial Services that Mr. Domian was "a threat to the staff and other residents" and that the staff "do not feel his control level is adequate for such a structured facility and his manipulative behavior is negatively impacting the therapeutic relationship." (Id.) On January 3, 2003, a detention hearing was held before Judge Sean J. McLaughlin, after which Mr. Domian was ordered to be detained pending sentencing. (Doc. 350.)

While at Gateway Mr. Domian sent a letter to the Court dated December 12, 2002, in which he represented to the Court as follows:

> I am doing wonderfully here, doing all the right things, learning new behavior and thinking patterns, participating in groups and not getting any writeup to this point. I believe if they make a recommendation today it would be very favorable.

He also notes that he was placed in a 28-day treatment program, and when that program ended he would be sent back to prison until sentencing on February 4, 2003. Thus, Mr. Domian asked that we order that he stay at a halfway house until sentencing at the end of his Gateway program. for The majority of the letter, however, detailed Mr. Domian's complaint's about his counsel and

ended with a request for new counsel to be appointed for sentencing. We construed Mr. Domain's letter as a Petition for New Counsel and for Modification of Pretrial Detention, and denied the Petition. (Doc. 339.) In this letter he detailed much of the same complaints about his counsel that he presents in his motion to vacate.

The United States Probation Office prepared a presentence investigation report for Mr. Domian in which his base offense level was determined to be 26. The base offense level was arrived at by using the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(7), which calls for a base offense level of 26 when the offense involved at least 500 grams but less than 2 kilograms of cocaine. The Probation Office had also determined that Mr. Domian's had 3 criminal history points corresponding to a Criminal History Category of II. Mr. Domian received a three-level reduction in his offense level based on his timely acceptance of responsibility, giving him a total offense level of 23. With a criminal history category of II and an offense level of 23, Mr. Domian's initial guideline sentencing range of imprisonment was 51 to 63 months.

After receiving the Presentence Report Mr. Domian's counsel filed a petition with respect to sentencing factors, in which he argued, in relevant part (a) that Mr. Domian did not enter the conspiracy while he was on probation, and thus his criminal history category should be reduced to a Level I; (b) that his role in the conspiracy was as a low-level drug user, that he was not aware of the scope and structure of the enterprise, he was not aware of the activities of others involved in the conspiracy, and that he deserved a four-level reduction as a minimal participant; and (c) that his Criminal History significantly over-represents the seriousness of his criminal history justifying a downward departure from Level II. (Doc. 356.) Based on these arguments counsel submitted that Mr. Domian's Criminal History should be reduced to a level I from level II, and that his offense level should be reduced from 23 to 19, thereby making his guideline range 30 to 37 months' imprisonment. (Doc. 356.) From that range then, counsel would argue for a downward departure based on Mr. Domian's criminal history being overstated.

However, on the date set for sentencing, the Probation Office informed the Court and

counsel of a recent guilty plea by Mr. Domian in state court that was not accounted for in the Presentence Investigation Report. (See Transcript of Sentencing, February 4, 2003, at 26-28, testimony of United States Probation Officer David J. Conde.) This new conviction added one criminal history point, giving Mr. Domian four criminal history points and a Criminal History category of III. Thus, with a criminal history category of III and an offense level of 23, Mr. Domian's guideline sentencing range of imprisonment was 57 to 71 months.

At sentencing, Mr. Domian's counsel argued the points he set forth in his petition with respect to sentencing factors, and in addition he argued against applying the additional criminal history point just learned about that day. (Transcript of Sentencing, at 28-29.) Also at sentencing, Mr. Domian testified on his own behalf in an attempt to show that he did not enter the conspiracy until after his probation had already passed, and that he was merely a drug user selling small quantities to offset the cost of his own using. (Transcript of Sentencing, at 4-9.)

We denied Mr. Domian's objections and found that Mr. Domian's offense level was 23, and his criminal history category was III, resulting in a guideline sentencing range of imprisonment of 57 to 71 months. On February 4, 2003, Mr. Domian was sentenced to 64 months' imprisonment, and four years supervised release. He timely filed an appeal from his conviction on February 13, 2003. Instead of filing a brief on the merits, however, Mr. Domian's counsel filed a motion to withdraw and an Anders brief advising the Court that after examining the record he found no appealable issues that were not wholly frivolous. See Anders v. State of California, 386 U.S. 738 (1967) and United States v. Youla, 241 F.3d 296 (3d Cir. 2001). The United States Court of Appeals for the Third Circuit affirmed the conviction and sentence in a nonprecedential opinion dated March 25, 2004, and entered on the docket on April 21, 2004. United States v. Domian, 92 Fed.Appx. 913 (3d Cir. 2004).

### *Motion to Vacate*

On July 16, 2004, Mr. Domian filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate"), pursuant to 28 U.S.C. §2255 (Doc. 517). The government filed a

4

response to the Motion to Vacate (Doc. 522), to which Mr. Domian filed a Reply (Doc. 524).

Mr. Domian's motion to vacate alleges that he was denied effective assistance of counsel.

Mr. Domian explains that his counsel, Stephen F. Capone, Esq., was ineffective as follows:

> Counsel was unprepared for court and the sentencing hearing. Mr. Capone never met with me at Erie County Prison. The only time we met to discuss my case was prior to court appearances. ( A total of less than 60 min.) At my sentencing hearing he was 'Surprised' by evidence. The [Assistant United States Attorney] produced a statement from my co-defendant. He was ill-prepared and unaware of the [Assistant United States Attorney's] evidence and witness. I wrote several letters to Mr. Capone expressing my concern about his [laissez] faire approach to my case..... I've requested the [wiretap] evidence from Mr. Capone on numerous occasions. He refused most of my phone calls. I had limited time and access to Mr. Capone thereby denying me effective counsel.
> Mr. Capone lacked basic knowledge on sentencing factors and procedures. He did not prepare at all for the sentencing hearing. . . . Mr. Capone did not produce any evidence or witnesses at any court appearance, especially, the sentencing hearing. I asked him to get statements from various co-defendants but he told me it was not necessary. For example, Special Agent Gorham of the FBI and EAGLE task force could have been cross-examined on the scope of the conspiracy.
> Counsel provided ineffective assistance on appeal by filing an Anders brief. The appeals court states "we conclude that counsels Anders brief is inadequate based upon our independent examination of the record." "The Appeal thus is not wholly frivolous."
> Any one of these circumstances in and of itself may not be called ineffective assistance of counsel. However, the pattern of conduct, lack of (court) preparation, lack of (sentencing) preparation, lack of physical evidence presented, lack of witnesses called , in its totality is ineffective counsel. Mr. Capone deprived me of the opportunity to present mitigating circumstances, present evidence and the opportunity for a reduction in sentence.

(Motion to Vacate, at ¶ 13(b).) In his Reply Brief, Mr. Domian restates his ineffectiveness claims as follows:

> A. Counsel was ineffective at the sentencing phase due to his failure to conduct an adequate pretrial investigation.
>
> B. Counsel was ineffective by failing to communicate with his client in a reasonable manner.
>
> C. Counsel was ineffective as a result of his failure to raise Isaza-Zapata Factors.
>
> D. Counsel was ineffective as a result of his filing of an Anders Brief.
>
> E. Counsel was ineffective as a result of the cumulative prejudicial effect of counsels' deficiencies.

(Reply to Respondent's Opposition to Petitioner's Motion to Vacate (Doc. 524)..

*Evidentiary Hearing*

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

We find no need for an evidentiary hearing as the record conclusively establishes that the Petitioner is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

**I. Standard of Review under 28 U.S.C. §2255**

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916. Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

## II. Discussion

### A. Ineffective Assistance of Counsel

Mr. Domian claims that his counsel was ineffective in failing to conduct an investigation before sentencing, he was ineffective in his performance at sentencing, and he was ineffective on appeal by filing an Anders brief. He also claims that his counsel was ineffective by failing to communicate with him. Finally, Mr. Domian claims that the cumulative effect of his counsel's conduct taken together constitutes ineffective assistance of counsel. As a result, he contends he was deprived of receiving a lower sentence.

#### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993); Strickland v. Washington, 466 U.S. 668, 687-688 (1984), cert. denied, 510 U.S. 1028 (1993). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

In assessing the first prong, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 688-90). In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692).

Addressing the second part of the Strickland analysis, the prejudice prong, the Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine

7

confidence in the outcome." Id. at 694.  In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

A claim of ineffective assistance must identify the specific errors counsel has made. Conclusory allegations are not sufficient to support a petition under Section 2255. Blackledge v. Allison, 431 U.S. 63, 74 (1977).

### 2. Analysis of Ineffectiveness Claims

The government contends that Mr. Domian's ineffectiveness claims should be dismissed because they have already been litigated.  The government also contends that even if counsel's representation fell below an objective standard of reasonableness, Mr. Domian cannot show that he was prejudiced as a result of his counsel's deficient performance.

In his Reply Brief, Mr. Domian insists that he is not raising the same issues in his motion to vacate as he did on appeal.  We disagree.

As noted, on appeal to the Third Circuit Court of Appeals, Mr. Domian's counsel filed a motion to withdraw and an Anders brief.  In addition, after being advised by the Court that he could submit a pro se brief, Mr. Domian filed such a brief and also filed a motion for appointment of new counsel to represent him on appeal. Domian, 92 Fed.Appx. at 915.

In addressing counsel's motion to withdraw the Third Circuit Court evaluated "whether counsel's brief adequately fulfills the Anders requirements" and "whether an independent review of the record presents any non-frivolous issues." Domian, 92 Fed.Appx. at 915, citing United States v. Youla, 241 F.3d 296 (3d Cir. 2001).  The Court stated that Mr. Domian's counsel identified the following issues as arguably supporting an appeal:

> (1) whether the plea comported with controlling constitutional and statutory standards, (2) whether the District Court properly refused to adjust the offense level pursuant to *U.S.S.G.* § 3B1.2 to reflect that Domian was a minimal or minor participant in the offense, (3) whether the District Court properly found as a matter of fact that Domian was on probation at the time of the offense, and (4) whether the District Court properly refused to adjust the criminal history level pursuant to *U.S.S.G.* § 4A1.3 because it overstated the seriousness of Domian's criminal history.

Domian, 92 Fed.Appx. at 916. In addition, the Court reviewed Mr. Domian's pro se brief, stating that he had identified the following appealable issues:

> (1) the District Court erred in refusing a downward adjustment for a less culpable role without considering the factors mandated by United States v. Isaza-Zapata, 148 F.3d 236 (3d Cir.1998), especially the third factor; (2) the District Court erred in refusing to appoint new counsel without making the necessary inquiries required by United States v. Welty, 674 F.2d 185 (3d Cir.1982); and (3) counsel provided ineffective assistance on appeal by filing an *Anders* brief because these issues are not frivolous.

Domian, 92 Fed.Appx. at 916. The Court concluded that counsel's Anders brief was inadequate based upon the Court's independent examination of the record. Id. The Court found one issue that was not wholly frivolous: whether there was error because "counsel inadequately requested a 2-level adjustment for a minor role in the offense." Id. The Court denied Mr. Domian's motion for appointment of new counsel because the appeal "although not wholly frivolous, is nonetheless lacking in merit." Id. As to the other issues raised in the Anders brief and by Mr. Domian, the Third Circuit Court disposed of them all as lacking in merit.

Before addressing the failure to grant a 2-level reduction under § 3B1.2 of the sentencing guidelines the Court concluded that the "District Court's determination that Domian was not entitled to either a 3 or 4-level reduction was not clearly erroneous . . . and any contention to the contrary lacks arguable merit." Domian, 92 Fed.Appx. at 917, citing United States v. Haut, 107 F.3d 213, 216 (3d Cir.1997). Thus, the Court's focus was only on the failure to grant a 2-level reduction.

Second, as to whether the plea comported with controlling constitutional and statutory standards, the Court stated as follows:

> [T]he District Court informed Domian of his constitutional rights and advised him that he was waiving those rights by pleading guilty. The terms of the plea agreement were discussed and the government outlined the evidence it would introduce at trial. The District Court advised Domian about the minimum and maximum sentence he could receive and told him that he would serve a term of supervised release. Domian was advised that his sentence would be determined by the District Court and might be different from what either his lawyer or the government predicted. Domian then admitted that he committed the offense with which he was charged. The plea clearly comports with constitutional due process, see Parry v. Rosemeyer, 64 F.3d 110, 113-14 (3d Cir.1995), and Federal Rule of

9

Criminal Procedure 11.

Domian, 92 Fed.Appx. at 919.

Third, as to whether the District Court properly found as a matter of fact that Mr. Domian was on probation at the time of the offense, the Court stated as follows:

> [T]he District Court added two points to Domian's criminal history score based on a finding that he was on probation at the time of the offense. Domian pleaded guilty in state court to harassment and was placed on probation, which ended on August 9, 2001. The District Court received evidence on the matter and found, as a matter of fact, that Domian engaged in drug transactions before his probation ended, specifically in June 2001. The District Court's finding of fact is supported by the record and is not clear error. Haut, 107 F.3d at 218.

Domian, 92 Fed.Appx. at 919.

Fourth, as to whether the District Court properly refused to adjust the criminal history level pursuant to U.S.S.G. § 4A1.3 because it overstated the seriousness of Mr. Domian's criminal history, the Court noted that it was "without jurisdiction to review a district court's refusal to depart downward, unless that refusal resulted from the court's erroneous belief that it lacked authority to depart." Id., citing United States v. Stevens, 223 F.3d 239, 247 (3d Cir.2000). The Court further concluded that "that the District Court knew that it had the authority pursuant to § 4A1.3 to adjust the criminal history level if it overstated the seriousness of Domian's criminal history." Id.

Fifth, as to whether the District Court erred in refusing to appoint new counsel without making the necessary inquiries required by United States v. Welty, 674 F.2d 185 (3d Cir.1982), the Court stated as follows:

> the District Court properly denied the post-guilty plea request for new counsel without making the Welty inquiry, and that Domian's Sixth Amendment right *920 to counsel was not violated. The Welty inquiry was not required because the District Court was aware from Domian's six-page letter why he sought new counsel. Id. at 188. Moreover, the District Court did not abuse its discretion in denying new counsel, because Domian did not show good cause, such as a conflict of interest, a failure to prepare for the sentencing hearing, or a complete breakdown in communication. See United States v. Goldberg, 67 F.3d 1092, 1098 (3d Cir.1995).

Domian, 92 Fed.Appx. at 919-920 (citation omitted). The Court further explained that Mr. Domian's counsel "continued to represent Domian aggressively at the sentencing hearing, notwithstanding the shortcomings we have identified." Id. at 920.

10

Finally, as to whether Mr. Domian's counsel provided ineffective assistance on appeal by filing an Anders brief, the Court concluded that Mr. Domian was not prejudiced by the filing of the Anders brief. Id. The Court explicitly decided the ineffective assistance of counsel issue on direct appeal because the record was sufficient. Id., citing United States v. Headley, 923 F.2d 1079, 1083 (3d Cir.1991); n.5 ("we will permit a defendant to pursue the claim on direct appeal where the record is sufficient and an evidentiary hearing to develop the facts is not needed.") The Court also stated as follows:

> Although we have identified an issue we do not believe is frivolous, we have nonetheless found it lacking in merit. There is no reasonable probability that, but for counsel's Anders brief, the result of this appeal would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052.

Domian, 92 Fed.Appx. at 920.

In light of what the Third Circuit Court of Appeals decided in its opinion we find that Mr. Domian's claims of ineffectiveness of counsel have already been litigated. Specifically, the following claims have already been explicitly litigated: Mr. Domian's claim that his attorney was ineffective at the sentencing phase for failing to conduct an adequate pretrial investigation; Mr. Domian's claim that his attorney was ineffective as a result of failing to raise the Isaza-Zapata factors; and Mr. Domian's claim that his attorney was ineffective as result of filing an Anders brief.

While not "litigated" in the same form, the Third Circuit Court effectively determined that Mr. Domian's claim that his counsel was ineffective as a result of failing to communicate with him in a reasonable manner was also without arguable merit. In Mr. Domian's December 12, 2002 letter to the Court, which we construed as a Petition for New Counsel, Mr. Domian set forth the communication problem he had with his counsel. In the letter he complained that his lawyer lied to him about our Order directing pretrial services identify and place Mr. Domian at an appropriate drug and alcohol treatment center pending sentence; that he did not make a transcription of a Compact Disc received in evidence; that he was never prepared for court; and that he told Mr. Domian that he does not get paid for telephone calls and would not come to Erie to see Mr. Domian. Mr. Domian also complained of the following:

11

> I asked Mr. Capone to get a statement form Paul Locato stating I gave him a Rolex watch and a Dell laptop computer and printer. Mr. Capone does not think this is important!
> Your honor I believe the above and the body wire worn by Locato (which I haven't heard) proves that my role and Terri Cocarelli's was that of users not major distributors in the conspiracy. Yes we sold a little to off set costs for our own addiction, but only a handful of people and small amounts of cocaine. If we were major distributors in the conspiracy we would have not gone into debt with Paul Locato.

We denied the motion to appoint new counsel. In reviewing the record on appeal the Third Circuit concluded that although counsel performed inadequately with regard to the request for a 2-level reduction for minor role that his counsel "continued to represent Domian aggressively at the sentencing hearing," that Mr. Domian had not shown that his counsel had failed "to prepare for the sentencing hearing," and that Mr. Domian had not shown "a complete breakdown in communication" with his counsel. Domian, 92 Fed.Appx. at 920.

In our view, all of Mr. Domian's ineffectiveness claims were previously raised and litigated. Mr. Domian is not entitled to re-litigate these issues in his section 2255 petition. Withrow v. Williams, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring) ("Prior opportunity to litigate an issue should be an important equitable consideration in any habeas case, and should ordinarily preclude the court from reaching the merits of a claim, unless it goes to the fairness of the trial process or to the accuracy of the ultimate result.") We decline to address these arguments again, except insofar as discussed below.

Mr. Domian contends that "ineffective assistance of counsel during sentencing was not in fact presented on his pro se brief to the Third Circuit." (Reply Brief, at 9.) It is true that Mr. Domian did not present as a distinct issue error as a result of ineffectiveness of counsel at sentencing. Of course, when the Third Circuit reviewed the record on appeal, they were reviewing counsel's performance prior to sentencing, at sentencing, and on appeal. Thus, we disagree with Mr. Domian that this issue has not been litigated. Nonetheless, for completeness sake, we will address this issue.

12

In Mr. Domian's discussion of his "failure to communicate" argument, it appears that what he is really complaining of is ineffectiveness as a result of counsel's failure to contact, interview, and call as witnesses his co-defendants Terri Cocarelli and Paul Licato, and his failure to interview the FBI Special Agent Frank Gorham. (See Reply Brief, at 7-10.) Assuming that the Third Circuit Court did not address that issue, we still will dismiss this claim as Mr. Domian cannot show that he suffered prejudice as a result of his counsel's failures.

Initially, we note that Mr. Domian has not shown that Mr. Capone's decisions regarding which witnesses to call falls below an objective standard of reasonableness. Even if it could be deemed to be a deficient performance, Mr. Domian is unable to show prejudice. As the Third Circuit Court noted in affirming our decision not to grant a 2-level reduction for Mr. Domian's alleged minor role

> Domian is not the sort of person the minor participation provision covers. Even the least culpable member of a conspiracy is not a minor participant if the extent of that member's participation is not minor. See United States v. Brown, 250 F.3d 811, 819 (3d Cir.2001). Domian's conduct with respect to the conspiracy involved several contacts with a major figure in the conspiracy from whom he received cocaine, without prepayment, and he, in turn, was supplying cocaine to other individuals. This is active, integral participation in the conspiracy and renders Domian ineligible for a minor role adjustment even if he was unaware of the complete scope of the conspiracy. Domian's level of culpability in the conspiracy was average, not substantially less so. U.S.S.G. § 3B1.2, cmt. n. 3(A); Isaza-Zapata, 148 F.3d at 238.

Domian, 92 Fed.Appx. at 918-919. These basic facts cannot be disputed, and in fact Mr. Domian has not denied them (although he downplays their significance). No testimony that Licato (one of the major figures in the conspiracy) and Cocarelli could have provided, and no cross-examination of the Special Agent, could have changed the fact that Mr. Domian had "several contacts with a major figure in the conspiracy from whom he received cocaine, without prepayment, and he, in turn, was supplying cocaine to other individuals." Id. at 918. Such conduct, the Third Circuit Court explained "is active, integral participation in the conspiracy and renders Domian ineligible for a minor role adjustment even if he was unaware of the complete scope of the conspiracy." Id. at 918.

As to the time of entry into the conspiracy of Mr. Domian, the evidence presented to the Court was that while Ms. Cocarelli was in rehab in June or July of 2001, Mr. Domian had obtained cocaine directly from Mr. Licato to sell. (Tr. of Sentence, at 13.) Mr. Domian also testified to this issue, but he was unable to recall any information about the events of June and July 2001. He agreed that during his relationship with Ms. Cocarelli, that she did leave to go to rehabilitation. (Id. at 4-5.) However, he was unable to recall if he obtained cocaine from Licato on his own when Ms. Cocarelli was gone. (Id. at 5.) He did recall that he had to give Licato a Rolex and a laptop in payment for cocaine, but his memory was that he gave the items to Licato around Labor Day. (Id.) He also admitted that he was in the relationship with Ms. Cocarelli while she was obtaining cocaine, and he simply did not recall whether he had dealt cocaine prior to Labor Day. (Id. at 7-8.)

Mr. Domian's testimony was not credible. We found that he in fact was involved in the conspiracy while he was on probation. Even had Mr. Licato appeared and testified that he received the Rolex and laptop from Mr. Domian around labor day, the evidence still showed that Mr. Domian was involved in the conspiracy prior to Labor Day. There is no reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Having found that each of Mr. Domian's separate claims of ineffectiveness fails, we also find that his final claim that the cumulative effect constitutes ineffectiveness also fails.

Mr. Domian's testimony followed a pattern of conduct of offering self-serving statements regarding his own behavior. For example, he complains that he received one criminal history point for mere "harassment" and later refers to this conviction as a "landlord and tenant" dispute that does not qualify for any criminal history points. As already discussed, he is adamant that he was not involved in the conspiracy while he was on probation, but the evidence shows that he was involved with obtaining and selling the cocaine Ms. Cocarelli got from Licato while Mr. Domian was on probation.

14

He never addresses the fact that while on Bond he was arrested for public drunkenness and criminal trespass. This occurred after the Court had given him the opportunity to be out on Bond. Despite this violation of his Bond, following his guilty plea we agreed that Mr. Domian needed drug and alcohol counseling and so we ordered from the Bench that Pretrial Services attempt to find a suitable place for Mr. Domain. When it became necessary to issue a written Order we did so, ordering that Pretrial Services identify and place Mr. Domian at an appropriate drug and alcohol treatment center pending sentence. Pretrial Services complied with this Order and placed Mr. Domian at Gateway. Mr. Domian, however, did not want to go back to jail after the 28-day program was completed and so he wrote a letter to the Court seeking an Order to ensure that he not go back to jail prior to sentencing. As noted above, Mr. Domian made a representation to the Court about how well he was doing at Gateway even though only seven days later Pretrial Services reported to the Court that in fact Gateway personnel reported that Mr. Domian was "a threat to the staff and other residents" and that the staff "do not feel his control level is adequate for such a structured facility and his manipulative behavior is negatively impacting the therapeutic relationship." (Report on the Conduct of Defendant While on Bond, attached as Exhibit 1 to Doc. 338.)

At sentencing, Mr. Domian still denied responsibility for his conduct in stating "the reports really don't reflect my life's history," yet he did "understand if you take the technical aspects of the law and you apply every letter to it, that's the way it comes out to be." (Tr. of Sentence, at 30.) He also appeared to deny that he even had prior offenses when he stated "I find myself here today looking at time so great for my -- what I consider my first offense," and "I'm being sentenced like I've been a previous offender." (Tr. of Sentence, at 31.) Rather than accepting responsibility for where his prior conduct had landed him he blamed the prosecutor who he said "is excellent at what he does, and he can take the small peccadillos and turn them into what really looks like major, major crime." (Tr. of Sentence, at 31.) He continued to make similar statements indicating a refusal to admit responsibility for his actions. (Tr. of Sentence, at 31 "I just don't understand in my

mind how my criminal history relates to some of the others I have seen," "it just bewilders me here today as I stand here and think that the first time in my life I could use a clean record, I can't use it.")

Perhaps the best response to Mr. Domian's bewilderment was provided by the prosecutor who first addressed Mr. Domian's criminal history as follows:

> [Mr. Domian's] not in category two because of one guilty plea to harassment. It's just really a simple mathematical equation because the guidelines set forth if you have a conviction such as his for harassment, you get one point. He talks about that making him ineligible for the safety valve, but you can't argue that you've lost something that you weren't entitled to in the first place. . . . [W]hile on probation from that conviction [he] was engaged in the drug dealing activity. So that's why he got an additional two points. And with anybody that walks into the courtroom, if they have one point and they commit another offense while on probation from that conviction for the one point, they have three points and that automatically puts them in category two.
> . . .
> and then while on release from a halfway house under the scrutiny of this particular arrest and indictment, he commits yet another offense. So . . . he gets an extra point for that offense. That puts him in category three.

(Tr. of Sentence, at 24-25.) Then, in response to Mr. Domain's apparent refusal to accept the consequences of his actions, the prosecutor succinctly stated,

> I'm not overstating his role. His role is what it is. He's in the middle of the pack of these 23 people. The guidelines reflect that. The punishment that comes is the punishment that the law sets out, and that's what he needs to face and, hopefully, this has made a change in his life.

(Tr. at Sentence, at 33.) It appears unlikely that Mr. Domian is willing to accept that it was his own conduct that put him in his current position as he continues to argue that he really does not have the criminal history reported in the Presentence Report. After his Reply Brief was filed, Mr. Domian sent a letter to the Court arguing that the two convictions counted by the Probation Office resulting in one point each should not have been counted. (Attached to this Order as Appendix A.)

**B. Certificate of Appealability**

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Mr. Domian's motion to vacate. In Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595 (2000), the United States Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. Here, we find that jurists of reason would not find it debatable whether Mr. Domian states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in our procedural ruling that his motion was procedurally barred. We also conclude that Mr. Domian has failed to show a substantial denial of a constitutional right. Accordingly, a certificate of appealability will not be issued with respect to Petitioner's motion to vacate.

**III. Conclusion**

Mr. Domian's section 2255 motion will be denied, and a certificate of appealability will not be issued.

Accordingly, the following order is therefore entered.

AND NOW, to-wit, this ___29th___ day of January, 2007, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 517), be and hereby is DENIED.

17

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a certificate of appealability SHOULD NOT ISSUE with respect to this Court's instant Order denying Mr. Domian's § 2255 Motion because, for the reasons set forth in the Opinion accompanying this Order which addresses his § 2255 Motion, Mr. Domian has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). See also Third Circuit Local Rule 22.2 (stating that "[i]f an order denying a petition under . . . § 2255 is accompanied by an opinion . . . it is sufficient if the order denying the certificate [of appealability] references the opinion . . . .").

_____
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:   Ronald A. Domian
      No. 20115-068
      FCI CUMBERLAND
      PO BOX 1000
      Cumberland, MD 21501

      Assistant United States Attorney
      (by electronic mail)